UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BROOKE H.,[1] | : | Case No. 3:21-cv-044 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Brooke H. brings this case before the Court challenging the Social Security Administration's denial of her application for Supplemental Security Income (SSI).  This case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #16), Plaintiff's Reply (Doc. #17), and the administrative record (Doc. #10).

**I.     Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on August 17, 2018, alleging disability due to several impairments, including bipolar disorder, obsessive compulsive disorder, post-traumatic stress disorder, and endometriosis. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Heidi Southern. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful employment since August 17, 2018, the application date. |
| Step 2: | She has the severe impairments of depression, bipolar disorder, anxiety, insomnia disorder, cocaine use disorder, and opioid use disorder. |
| | Plaintiff has the following nonsevere impairments: mild sedative, hypnotic or anxiolytic use disorder and a history of endometriosis. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels subject to the following limitations: (1) simple, routine, repetitive tasks defined as work that can be learned in 30 days or less; (2) no production-rate pace work (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner); (3) occasional contact with coworkers and supervisors; (4) no contact with the general public; and (5) occasional changes in an otherwise routine work setting." |
| | She is unable to perform any past relevant work. |

> Step 5: She can perform a significant number of jobs that exist in the national economy.

(Doc. #10-2, *PageID* #s 57-68). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability since August 17, 2018, the date the application was filed. *Id.* at 68.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10, *PageID* #s 57-66), Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #16), and Plaintiff's Reply (Doc. #17). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.   Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.   Discussion

In her Statement of Errors, Plaintiff argues that the ALJ erred in evaluating the opinions of Brendan Carroll, M.D., and Mr. Donald Amos, MS, PCC as well as Plaintiff's mental health symptoms. (Doc. #12, *PageID* #s 1774-79). The Commissioner maintains that the ALJ appropriately reviewed these opinions and that her decision is supported by substantial evidence. (Doc. #16, *PageID #s* 1494-1501).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c. Because Plaintiff's claim for disability was filed in August 2018, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 416.920c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 416.920c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to

"explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 416.920c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 416.920c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 416.920c(c)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id*.

In this case, Plaintiff alleges that the ALJ erred in her review of the opinions by Donald Amos, MS, PCC and Brendan Carroll, M.D. On December 6, 2018, Plaintiff's therapist, Donald Amos, MS, PCC, authored a Daily Activities Questionnaire. (Doc. #10-7, *PageID* #s 464-65). In his assessment, Mr. Amos indicated that Plaintiff was currently residing with her boyfriend, his mother, and her children. *Id*. at 464. As for her deficits in her ability to live independently, Mr. Amos noted that Plaintiff is unable to maintain financial subsistence, work behavior and has childcare responsibility. *Id*. He stated that Plaintiff has a history of erratic relationship functioning and rage behavior. *Id*. As for her social functioning, Mr. Amos pointed out that plaintiff rarely visits friends and that she is limited in social activities with no regular social activity away from home. *Id*. She also has a history of short-term job behavior, struggles with multitasking, and easily conflicts with others, especially her boyfriend. *Id*. Mr. Amos noted that Plaintiff has irregular attendance with keeping her appointments due to transportation problems and no driver's license. *Id*. at 465. Mr. Amos also indicated that Plaintiff has tried several medications from the psychiatrist but has had poor response/tolerance for multiple medications. *Id*.

On April 29, 2019, Mr. Amos completed another Daily Activities Questionnaire, reporting that Plaintiff is dependent on others, unable to establish sufficient income or childcare, has no transportation, and unstable relations. *Id*. at 473-74. According to Mr. Amos, Plaintiff relates only to immediate family and her boyfriend and is prone to conflicted relations. *Id*. at 473. He noted that Plaintiff has only attempted brief jobs for which she is usually fired for conflicted relations and poor attendance. *Id*. He also indicated that Plaintiff has poor attention, labile mood, and has not responded well to most medications. *Id*. Mr. Amos described Plaintiff's past legal difficulties,

6

including a robbery charge and a dismissed charge of domestic violence. *Id*. He noted that she is dependent upon others for transportation and bill paying and has missed counseling appointments due to transportation issues. *Id*. at 474. Finally, Mr. Amos stated that Plaintiff has required recurrent medication changes because of her poor responses. *Id*.

Plaintiff's psychiatrist, Brendan Carroll, M.D., completed a Mental Status Questionnaire on May 5, 2019. *Id*. at 476-78. In the assessment, Dr. Carroll noted that he had been treating Plaintiff from August 2015 through April 2019 for bipolar disorder and that he has prescribed her numerous medications. *Id*. He described Plaintiff as having euthymic mood and affect, normal speech, no psychosis, fair judgment, fair insight, well oriented, and a good fund of knowledge. *Id*. at 476. As for her mental functioning, Dr. Carroll opined that Plaintiff could only remember, understand, and follow directions for two hours a day. *Id*. at 477. He found that she was likewise limited to two hours a day in tasks such as maintaining attention, sustaining concentration, persisting, and completing them in a timely fashion. *Id*. Dr. Carroll further opined that Plaintiff has severe social anxiety and poor adaptation ability and may decompensate. *Id*. Dr. Carroll concluded that Plaintiff "would worsen" in reaction to the pressures in work settings or elsewhere, involved in simple, routine, or repetitive tasks. *Id*. at 477.

The final opinion at issue was rendered on May 22, 2020, and signed by both Dr. Carroll and Mr. Amos. (Doc. #10-11, *PageID #s* 1423-1425). In the assessment, they listed Plaintiff's diagnoses as Bipolar I disorder, manic with psychosis, and cocaine dependence. *Id*. at 1423. They further noted that Plaintiff suffers from poor memory; oddities of thought, perception, speech, and behavior; sleep disturbance; mood disturbance; emotional lability; manic syndrome; recurrent

7

panic attacks; obsessive or compulsions; psychomotor agitation or retardation; generalized persistent anxiety; and difficulty thinking or concentrating. *Id*. Dr. Carroll and Mr. Amos opined that Plaintiff is moderately to markedly limited in understanding, remembering, or applying information; markedly to extremely limited in concentrating, persisting, or maintaining pace; and primarily markedly impaired in adapting or managing herself. *Id*. at 1424. They found Plaintiff is markedly limited in her overall ability to learn, recall, or use information to perform work activities. *Id*. at 1425. They also determined that Plaintiff is extremely limited in her abilities to relate to and work with supervisors, co-workers, and the public, to focus attention on work activities and to stay on task at a sustained rate, and to regulate her emptions, control her behavior and maintain well-being in a work setting. *Id*. They opined that Plaintiff would be unable to perform regular, full-time, competitive work without missing work more than three times per month or without being off task more than 20% or the workday. *Id.* at 1423. Finally, when asked whether Plaintiff would still have severe underlying psychiatric conditions that markedly impair her ability to complete a normal work schedule if she no longer abused drugs or alcohol, Dr. Carroll and Mr. Amos indicated "yes." *Id*. at 1425.

In reviewing the opinions of Mr. Amos, ALJ Southern concluded that they were only "somewhat persuasive as they are not entirely consistent with the balance of the record which indicates that medication actually stabilizes [Plaintiff's] thought processes and mood when she is fully compliant and refrains from drug use." (Doc. #10-2, *PageID* #59). The ALJ also pointed out that Mr. Amos' description of Plaintiff's social abilities "belies notes in treatment records[.]"

Nonetheless, she concluded that the social limitations included in Plaintiff's RFC would accommodate any problems she might have in this area. *Id*.

ALJ Southern found Dr. Carroll's May 2019 opinion to not be persuasive and the May 2020 opinion he authored with Mr. Amos to be "somewhat persuasive" as it was "not entirely consistent with the balance of record." *Id*. at 59-60. In support, the ALJ acknowledged that it was "plausible to conclude that [Plaintiff] does exhibit some functional difficulties particularly related to mood variance[]" but pointed out that she was only hospitalized once and that this was the result of a short-term exacerbation of her symptoms associated with drug abuse and noncompliance with medication. *Id*. at 59. Otherwise, ALJ Southern found that Plaintiff had conservative treatment and that "[h]er ability to maintain attention and concentration, relate to others in an appropriate manner, cope with work stress, and adapt to change inherent with multistep tasks are limited to no more than a moderate extent when she is drug-free[.]" *Id*. According to ALJ Southern, these findings were supported by Dr. Carroll's own treatment notes, which most recently described Plaintiff as having "normal associations, speech, and fund of knowledge; intact memory; focused attention and concentration; euthymic mood; intact judgment/insight/and coherent thought processes." *Id*. at 59-60.

The ALJ's reasons for finding the opinions of Mr. Amos and Dr. Carroll at most somewhat persuasive are clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 416.920c—supportability and consistency. She pointed out that discrepancies between Dr. Carroll's opined limitations of Plaintiff's functioning and his clinical conclusions that Plaintiff's mental status examinations are

quite normal. Indeed, on the mental status examination he completed, Dr. Carroll reported that Plaintiff presented with euthymic mood and affect, appropriate appearance and orientation, no psychosis, fair judgment, and a good fund of knowledge. (Doc. #10-7, *PageID* #476). ALJ Southern also noted that Dr. Carroll's findings were not supported by Plaintiff's largely conservative treatment and ordinary level of psychological functioning.

Similarly, the ALJ pointed out inconsistencies between Mr. Amos' assessments and the balance of the treatment records, which indicate that medication stabilizes Plaintiff's thought processes and mood when she is fully compliant and refrains from drug use. She also found that Mr. Amos' descriptions of Plaintiff's level of social functioning was at odds with other evidence in the record indicating that Plaintiff retains "the ability to conform her behavior to socially acceptable standards presenting as pleasant calm and cooperative with euthymic appropriate mood and affect." (Doc. #10-2, *PageID* #61) (citing Doc. #10-7, *PageID* #s 285, 469; Doc. #10-8, *PageID* #s 727, 765, 860, 906; Doc. #10-9, *PageID* #s 942, 951, 967, 976, 990; Doc. #10-10, *PageID* #s 1099, 1100, 1104, 1109, 1116, 1122). ALJ Southern also noted that Plaintiff has been able to maintain her relationship with her boyfriend of eight years and has at least one friend, who she describes as "supportive." *Id.* (citing Doc. #10-9, *PageID* #1008; Doc. #10-10, *PageID* #1072).

Further, ALJ Southern evaluated the different categories of mental functioning and found that Plaintiff had no more than moderate limitations while Dr. Carroll and Mr. Amos found limitations ranging from marked to extreme in all of these categories. (*Compare* Doc. #10-2, *PageID* #s 60-61 *with* Doc. #10-11, *PageID* #1425). In fact, in the context of discussing the severity of Plaintiff's mental impairments, the ALJ provided an in-depth explanation as to why

she concluded that Plaintiff only had moderate limitations in the realms of mental functioning. (Doc. #10-2, *PageID* #s 60-61). This also supports the ALJ's conclusion that the opinions of Dr. Carroll and Mr. Amos were inconsistent with the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions."). In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 416.920c(b)(2) (requiring only that the ALJ articulate how she considered the supportability and consistency factors).

Additionally, while ALJ Southern discounted the weight given to the opinions of Dr. Carroll and Mr. Amos, she did include several restrictions in Plaintiff's RFC that accommodate her psychological limitations. In fact, the ALJ restricted Plaintiff to (1) simple, routine, repetitive tasks defined as work that can be learned in 30 days or less; (2) no production-rate pace work (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner); (3) occasional contact with coworkers and supervisors; (4) no contact with the general public; and (5) occasional changes in an otherwise routine work setting. (Doc. #10-2, *PageID* #63). In formulating this RFC, the ALJ thoroughly considered all of the evidence of record and rendered a mental RFC assessment, which was supported by substantial evidence, including Plaintiff's complaints, medical records, and state medical opinions. *See* 20 C.F.R. § 416.945(a)(3) (stating that RFC assessments should be "based on all of the relevant medical and other evidence").

Finally, the ALJ did not err in discounting Plaintiff's credibility based on her failure to comply with her psychiatric treatment. A lack of medication and treatment compliance, without good reason, provides valid grounds for finding an individual's reported symptoms less than fully credible. *See Lawson v. Comm'r of Soc. Sec.,* 192 Fed. Appx. 521, 527-28 (6th Cir. 2006) (upholding a denial of benefits where "the ALJ held that 'Lawson's credibility with respect to her symptoms and impairments is significantly diminished by her failure to follow-up with recommendations of treating physicians to seek psychiatric or mental health treatment [and] failure to take medications as prescribed[.]'").  In this case, Plaintiff has not offered any reason or evidence as to why she did not comply with her medication and psychiatric treatment.  As Plaintiff herself acknowledged, when she avoided drug abuse and complied with her treatment regimen, her symptoms positively responded to medication management. (Doc. #10-7, *PageID* #s 420, 425, 427; Doc. #10-9, *PageID* #954).  Accordingly, the ALJ validly considered Plaintiff's treatment noncompliance when assessing her symptom severity.

For all these reasons, the undersigned finds that the arguments raised in Plaintiff's Statement of Errors are without merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #12) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

September 19, 2022                                                *s/Peter B. Silvain, Jr.*
                                                                            Peter B. Silvain, Jr.
                                                                            United States Magistrate Judge